# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

MILES CHRISTI RELIGIOUS ORDER,
FATHER CESAR BERTOLACCI, and
BROTHER FRANCISCO CONTE-GRAND,    Case Number: 07-14003

        Plaintiffs,    JUDGE PAUL D. BORMAN
            UNITED STATES DISTRICT COURT
v.

NORTHVILLE TOWNSHIP, CHIP SNIDER,
in his official capacity as Northville Township
Manager, JENNIFER FREY, in her official
capacity as the Director of Community
Development for Northville Township, and
JOSEPH BAUER, in his official capacity as
Ordinance Enforcement Officer for Northville
Township,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION BASED ON THE RIPENESS DOCTRINE

     Before the Court is Defendants Northville Township, Chip Snider, Jennifer Frey, and Joseph Bauer's ("Northville Township" or "the township") Motion to Dismiss for Lack of Subject Matter Jurisdiction Based on the Ripeness Doctrine, filed October 7, 2008. (Doc. No. 31). The motion was fully briefed, and the Court held a motion hearing on January 28, 2009. For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss, and dismisses Plaintiffs' complaint without prejudice.

**I. BACKGROUND**

This case arises out of a land-use dispute between the Miles Christi Religious Order and Northville Township. Miles Christi alleges that Northville Township made a zoning determination, classifying the house, where Miles Christi priests and monks reside and conduct classes and services as a small church, and that this determination violates Plaintiffs' First Amendment religious, speech and expressive association rights, Plaintiffs' equal protection and due process rights, and similar rights guaranteed by the Michigan Constitution, and the federal Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et seq. ("RLUIPA").

In fact, Northville Township has never made a final zoning determination classifying the house as a small church, and Plaintiffs have continued to conduct religious classes and services at the house.

Plaintiff Miles Christi is an international Catholic religious order approved by the Roman Catholic Church. (First Amended Complaint ¶¶ 6, 15 [hereinafter "Compl."]). It operates as a non-profit organization, incorporated under the laws of the State of Michigan and recognized by the Internal Revenue Service as a 501(c)(3) organization. (Compl. ¶ 6). Plaintiff Father Cesar Bertolacci is a Catholic priest and the local Superior of the Miles Christi religious order. (Compl. ¶ 9). Plaintiff Brother Francisco Conte-Grand is a Brother in the Miles Christi religious order. (Compl. ¶ 10).

Father Bertolacci and Brother Conte-Grand, along with other members of the Miles Christi religious order, reside in a house in a residential area of Northville Township that Miles Christi has owned and occupied since 2002. (Compl. ¶¶ 8-10). Miles Christi acquired the house through a donation by a Catholic religious order of sisters, who previously cared for the mentally handicapped

2

at the residence. (Compl. ¶ 6).

Since 2002, six members of the Miles Christi religious order have resided in the home. (Compl. ¶ 8). Miles Christi holds regularly scheduled Bible study classes at the house throughout the week, and conducts Mass and the Sacrament of Penance in the chapel located in the home. (Compl. ¶¶ 17, 26). Miles Christi denies hosting public worship services at the home. (Compl. ¶ 29).

Beginning in 2003, Miles Christi's neighbors started complaining to the township about Miles Christi's use of the property, most specifically addressing the number of vehicles parked at the house. (Defs.' Mot. Ex. E, resident letters). The township investigated but did not initially find any problems with Miles Christi's use of the property. (Compl. ¶ 40). During the investigation, Plaintiff met with Maureen Osieki, the Northville Township Planner, regarding Miles Christi's use of the property. (Compl. ¶ 43). Ms. Osieki advised Plaintiffs to write a letter to the Northville Township Clerk, introducing themselves as a religious community and informing the clerk about their ownership and use of the property. (Compl. ¶ 44). Plaintiffs were told that once the clerk received the letter, the township would determine whether Miles Christi's use of the property complied with the township's zoning ordinances. (Compl. ¶ 44).

The letter Plaintiffs sent to the township clerk described Miles Christi as a religious order, which is a "religious family, with strong and permanent bonds, which are the religious vows according to the rules of the Church." (Defs.' Br. Ex. G, Miles Christi letter). Plaintiffs stated that the house is meant to a private residence for the priests and brothers of Miles Christi. (Id.) Plaintiffs also revealed that the house contains an "oratory" where Mass and confession may be celebrated. (Id.) Plaintiffs stated that they conduct Mass every day at the oratory, and "welcome everyone"

3

although usually only friends and family attend Mass in the oratory, which can only seat 10 guests. (Id.)  Plaintiffs further wrote that "small activities for our friends" are held occasionally or on a weekly basis at the home.  (Id.)

A few days after Plaintiffs sent their letter, Ms. Osieki told that the Northville Township Zoning Board had decided that their use of the property was in compliance with the township's zoning ordinances and regulations.  (Compl. ¶ 46).

Neighbors continued to complain, however, and Plaintiffs allege that "as the neighbor's complaints intensified, so did Defendants' desire to find an ordinance violation."  (Compl. ¶ 52). Defendants began observing the property in 2003, and kept notes of the number of cars parked at the residence, the time of day the cars were present and the license plate numbers of the vehicles. (Compl. ¶ 52).

Defendant Joseph Bauer, the Northville Township Ordinance Enforcement Officer, visited the property to investigate the neighbor complaints in February 2007.  (Compl. ¶ 54).  Officer Bauer did not find any ordinance violations during his visit.  (Compl. ¶ 54).

Following Officer Bauer's visit, the township increased its surveillance of the property to include uniformed police officers in marked police vehicles watching and photographing the property. (Compl. ¶ 55).  Plaintiffs allege that as a result of the increased police presence, they canceled one of their Bible study groups and limited visits by friends and supporters. (Compl. ¶ 57).

On February 27, 2007, Plaintiffs received a letter from Officer Bauer informing them that the surveillance revealed that vehicles were parked on grassy areas of the property, in violation of a parking ordinance, Article 26.  (Compl. ¶ 58).  Officer Bauer also asked Plaintiffs to provide

4

detailed specifications of the oratory. (Compl. ¶ 58).

In a letter dated March 1, 2007, Father Bertolacci reported that the oratory was 20 feet by 15 feet, with six pews and capacity of 18 people. (Defs.' Br. Ex. K, Bertolacci letter). Father Bertolacci also wrote that faith-based groups regularly met at the house during the week, and that volunteer opportunities took place at the house regularly during the week. (Id.)

Two weeks later, Defendants Chip Snider, the Northville Township Manager, Jennifer Frey, the Northville Township Community Planning Director, and Officer Bauer met with Plaintiffs. (Compl. ¶ 59). At the meeting, Ms. Frey stated that Plaintiffs' use of the property, as described in Father Bertolacci's letter, resembled a small church or place of worship under the zoning ordinances. Ms. Frey stated a concern with Plaintiffs' intensified use of the property, and asserted they would have to go through the township's site plan approval process. (Compl. ¶ 60; Defs.' Br. Ex. V2, Frey Testimony 54-55). At the end of the meeting, Ms. Frey asked Plaintiffs to contact Officer Bauer within 30 days, and tell him how Plaintiffs wanted to proceed. (Bertolacci Dep. 38; Defs.' Br. Ex. N, Frey Aff. 14). Ms. Frey also told Plaintiffs that they had 60 days to submit a site plan and/or apply for a zoning variance. (Frey Aff. ¶ 14). Plaintiffs did neither. They did not submit a site plane, and they did not apply for a zoning variance.

After the meeting, Miles Christi hired an engineering firm to estimate the costs of renovating the property to comply with what Miles Christi believed were the relevant zoning code requirements. (Compl. ¶ 64). Plaintiffs state that the estimate cost $5,000, and allege that the extensive renovations to the exterior of the property that the engineering firm recommended would cost in excess of $80,000. (Compl. ¶ 66). Plaintiffs did not discuss the estimate/plan with the township.

To recapitulate, Miles Christi never submitted a site plan, nor did Plaintiffs apply for a

zoning variance. (Defs.' Br.Ex. S1, State District Court Tr. Vol. I, 13, Sept. 12, 2007). On June 5, 2007, Officer Bauer issued a civil infraction ticket to Miles Christi for failure to submit a site plan application to the township, in violation of Zoning Ordinance § 170-33.3. (Id.; Defs.' Br.. Ex. M, civil infraction ticket). Per Defendants, "[t]he civil infraction ticket commenced legal proceedings to enforce the Township's site plan review procedures based on the conclusion that, under § 170.33.2, Miles Christi had changed the use of the Property from a mere residence to a more intensive non-residential use resembling a small church or place of worship." (Defs.' Br. 7).

Plaintiffs challenged the ticket in state district court. (State District Court Tr. Vol. I 3). The state district court invited the Plaintiffs to raise and brief the federal constitutional issues in that court. However, Plaintiffs' counsel requested rejected that invitation and an adjournment in order to file a constitutional challenge to the ticket in federal court. (Id. at 4-6). The state district court denied the adjournment. (Id. at 4-6). Plaintiffs' counsel represented to the court that he was ready to proceed with the hearing to determine the facts of the case, while noting that he was going to subsequently file a suit in federal court raising the federal constitutional and statutory issues. (Id. at 4).

After hearing testimony from Officer Bauer, two of the complaining neighbors, Gail and Gerald LeVan, and Jennifer Frey, the Northville Township Director of Community Development, the state district court judge rendered an opinion from the bench. (Id. at 5; Defs.' Br. Ex. W, State District Court Tr. Vol. II, 99, Sept. 24, 2007). The court held that the ordinance governing more intense use was "overly vague and subjective," and concluded that the township had not shown that a change in use had occurred. (Id. at 99-100, 103-105).

The township appealed to the Wayne County Circuit Court. (Defs.' Mot. Ex. P, Opinion,

6

Aug. 11, 2008). The state circuit court judge reversed the state district court's decision, holding that the zoning ordinance is not vague and that the township met its evidentiary burden of showing that a change in use of the property occurred. (Defs.' Mot. Ex. P, Opinion, 5, 9, Aug. 11, 2008). The case was then remanded to the state district court for further proceedings. (Id. at 9). Per a stipulated order by the parties, the state district court litigation has been stayed pending the outcome of this case and all related appeals. (Doc. No. 47). Plaintiffs continue to conduct the regularly scheduled Bible classes and religious services; the former are noticed to the public on the Plaintiffs' website.

Plaintiffs filed suit in this Court on September 21, 2007. (Doc. No. 1). Plaintiffs' First Amended Complaint, filed December 3, 2007, alleged the following claims:

> Count I: Religious Land Use and Institutionalized Persons Act of 2000
> Count II: Free Exercise -- First Amendment
> Count III: Freedom of Speech - First Amendment
> Count IV: Freedom of Expressive Association - First Amendment
> Count V: Equal Protection - Fourteenth Amendment
> Count VI: Due Process - Fourteenth Amendment
> Count VII: Religious Discrimination/Equal Protection - Michigan Constitution
> Count VIII: Expressive Assembly and Association - Michigan Constitution
> Count IX: Free Exercise - Michigan Constitution.

In the instant motion, Defendants ask this Court to dismiss Plaintiffs' complaint because Plaintiffs' claims are unripe for review.

## II. ANALYSIS

Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(1) (lack of subject matter jurisdiction), 12(b)(6) (failure to state a claim) and 12(c). Fed.R.Civ.P. 12(b) (1) states in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject

matter. . . .

When subject matter jurisdiction is challenged on a motion to dismiss, it is the plaintiff's burden to prove the existence of subject matter jurisdiction. *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir. 1986). Because Defendants argue that Plaintiffs' claims are unripe, this Court construes Defendants' motion to dismiss as a motion to dismiss the complaint, under Fed. R. Civ. P. 12(b)(1), based on a lack of subject matter jurisdiction.

Defendants argue that Plaintiffs' claims are not ripe for adjudication because they have not obtained a final decision from the township regarding the type and extent of the regulation of the property. (Defs.' Br. 13). Plaintiffs respond that their claims are ripe for adjudication because they do not have to exhaust administrative remedies before filing an action pursuant to 42 U.S.C. § 1983. (Pls.' Resp. 14). Plaintiffs also contend that the finality requirement has been met because Ms. Frey, the initial decisionmaker arrived at a definitive position, which caused Plaintiffs to suffer an actual injury, i.e. a chilling effect on their First Amendment activities, and any appeal to the zoning board of appeals would be remedial in nature. (Pls.' Resp. 15-16).

When deciding whether a claim is ripe for adjudication, the United States Court of Appeals for the Sixth Circuit instructs courts to consider three factors: 1) the likelihood that the harm alleged by the plaintiff will ever be inflicted; 2) whether the factual record is sufficiently developed to facilitate a fair adjudication of the claims' merits; and 3) the hardship to the parties if the court denies judicial relief at this stage of the proceedings. *Adult Video Ass'n v. United States Dept. of Justice*, 71 F.3d 563, 568 (6th Cir.1995) (internal citations omitted).

In a Fifth Amendment takings case, the United States Supreme Court articulated a more specific test for determining ripeness in cases involving the alleged taking of a property interest: 1)

the governmental entity must have reached a final decision regarding the application of the regulations to the property; and 2) the plaintiff must have sought compensation using the procedures implemented by the state. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 194 (1985).

The Sixth Circuit has since extended the first prong of the ripeness test articulated in *Williamson County* to other types of constitutional claims involving land use disputes. *Grace Community Church v. Lenox Township*, 544 F.3d 609, 615 (6th Cir. 2008), citing *Insomnia Inc. v. City of Memphis*, 278 Fed. Appx. 609, 613-14 (6th Cir. 2008) (observing that the Sixth Circuit has applied the finality requirement to equal protection, substantive and procedural due process and takings claims arising from land use disputes). Thus, "the government entity charged with implementing the regulations must have reached a final decision regarding the application of the regulations to the property at issue" before a plaintiff can bring a claim for constitutional violations arising from a land use dispute. *Insomnia*, 278 Fed. Appx. at 612.

In *Insomnia Inc. v. City of Memphis*, 278 Fed. Appx. 609, 613-14 (6th Cir. 2008), the Sixth Circuit applied the finality requirement in a First Amendment case arising from a land dispute. 278 Fed. Appx. at 615-616. In doing so, the Court adopted the two-part analysis the Second Circuit Court of Appeals used in *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342 (2nd Cir. 2005).

In *Murphy*, the plaintiffs brought a First Amendment claim after they were served with a cease and desist order prohibiting them from holding prayer meetings in their home. 402 F.3d at 350. The Murphy plaintiffs did not seek a variance from the zoning board of appeals prior to instituting their suit. *Id.* at 350. In applying the finality requirement, the Second Circuit first considered whether the plaintiffs experienced an immediate injury, and then considered whether

9

requiring the plaintiffs to pursue "administrative remedies would further define their alleged injuries." *Id*. at 351. This Court notes that in the instant case there is no such "cease and desist" order.

The court decided that the *Murphy* plaintiffs had not suffered an immediate injury because, had they pursued an appeal of the cease and desist order with the zoning board of appeals, the appeal would have stayed the enforcement of the cease and desist order. *Id*. at 351. The court further concluded that the factual record was not sufficient to facilitate adjudication because "the resolution of the constitutional and statutory claims we are asked to consider here hinge on factual circumstances not yet developed." *Id.* at 351. As a result, the court held that it lacked jurisdiction over the plaintiffs' claims. *Id.* at 352.

In applying the *Murphy* two-part analysis to the facts in *Insomnia*, the Sixth Circuit found that the plaintiffs, landowners seeking to subdivide property to be used for the purposes of adult entertainment, had not suffered an immediate injury when the defendant city denied their application for subdivision. *Insomnia*, 278 Fed. Appx. at 615. The Court noted that the plaintiffs could file a renewed plan as a proposed development, which may be approved by the city, thereby mooting the plaintiffs' claim of First Amendment retaliation. *Id.* The Court also concluded that if the plaintiffs' renewed plan as a proposed development is rejected, "this outcome will further define the contours of Plaintiffs' claim of First Amendment retaliation." *Id.* at 615-616.

Here, Plaintiffs raise First Amendment freedom of religion, speech and association claims, a due process claim, an equal protection claim and a claim under RLUIPA. It is undisputed that Plaintiffs did not appeal the township's determination that a change in use of the property had occurred – to a more intensive use– to the zoning board of appeals. In addition, Plaintiffs did not

submit a site plan and did not seek a variance or other administrative relief from the zoning board of appeals. This case, therefore, is nearly identical to the factual scenarios presented in *Murphy*, 402 F.3d at 350, and *Insomnia*, 278 Fed. Appx. at 615.

First, because Plaintiffs did not appeal the Director of Community Development's decision that a change in use had occurred at the property to the zoning board of appeals, the township's final determination is unknown. Second, Plaintiffs did not suffer an immediate injury as a result of Defendants' actions, and the factual record is not sufficiently developed to produce a fair adjudication of the parties' claims.

. As in *Murphy*, 402 F.3d at 351, had Plaintiffs appealed Ms. Frey's, the Northville Township Director of Community Development, decision that a change in use had occurred at the property, the appeal would have stayed any action. (Defs.' Br. Ex. II, Northville Township Zoning Ordinance Article 41, § 170.41.4 ). Therefore, Plaintiffs would not have been required to submit to the site plan review process, and they could not have been ticketed for failing to submit a site plan.

Furthermore, Plaintiffs have not suffered an immediate injury attributable to Defendants' actions. Plaintiffs' decision to cancel a Bible Study group on one occasion and limit the number of visitors to the property is not an immediate injury suffered as a result of Defendants' action; Defendants did not require, or even suggest that Plaintiffs limit the number of guests to the property. Plaintiffs were not subject to a cease and desist order. That Plaintiffs limited the number of people at the property on their own initiative was not mandated by Defendants. Further, Plaintiffs' response did not, and could not, cure the infraction for which the ticket was issued: failing to submit a site plan. The actions Plaintiffs took are not, therefore, attributable to a governmental "chilling" of speech. In addition, the Court reiterates that presently scheduled Bible classes and religious services

11

are ongoing at the residence.

Similar to the plaintiffs in *Murphy*, 402 F.3d at 350, and *Insomnia*, 278 Fed. Appx. at 615-616, if Ms. Frey's decision is overturned by the zoning board of appeals, Plaintiffs' constitutional claims will likely be moot. If, however, Ms. Frey's decision is upheld, "this outcome will further define the contours of Plaintiffs' claim[s]." *Insomnia*, 278 Fed. Appx. at 615-616.

This case is distinguishable from *Murphy*, 402 F.3d at 350, and *Insomnia*, 278 Fed. Appx. at 609, by one fact. In this case, Plaintiffs challenged the ticket the township issued to them for failing to submit a site plan in state district court. However, the state district court has not rendered a decision, and the state district court proceedings have been stayed by the parties. Therefore, the stayed district court litigation does not affect the ripeness analysis.

Plaintiffs cite a number of cases in support of their argument that their claims are ripe. Those cases are all distinguishable from the facts at bar.

Plaintiffs argue that *Williamson County*, 473 U.S. at 172, does not prevent them from turning directly to this Court for relief, and cite *Lamar Advertising Co. v. Township of Elmira*, 328 F. Supp. 2d 725, 732-35 (E.D. Mich. 2004) and *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1214-15 (6th Cir. 1992), in support of their argument. (Pls.' Resp. 15).

In *Lamar*, an outdoor advertising company filed a § 1983 action against the township after the township refused to allow it to construct a billboard along a state highway. 328 F. Supp. 2d at 726-27. The court held that the township's refusal to issue the necessary building permits, on the basis of a later-enacted ordinance, was a unlawful prior restraint of commercial speech because the ordinance was not in effect at the time Lamar filed its application to construct the billboard. *Id.* at 733-34. Because Lamar applied for the building permits before the township ordinance was enacted,

12

the township was required as a matter of law to issue the building permits, and its refusal to do so was a violation of the First Amendment. *Id*. at 734.

*Lamar* is distinguishable from the present case for two reasons: 1) this is not a case where the plaintiff is entitled to continue or move forward with its activities as a matter of law; here, there is a factual question about whether Plaintiffs' activities constitute a more intense use of the property under the township's zoning ordinances; and 2) *Lamar* was decided before *Insomnia,* 278 Fed. Appx. at 609, and *Grace Community Church*, 544 F.3d at 609, in which the Sixth Circuit expanded the *Williamson County* ripeness test to First Amendment claims.

*Pearson* was also decided before *Insomnia* and *Grace Community Church*. In *Pearson*, a landowner sued Grand Blanc for denying his request for rezoning of a property, which the landowner alleged constituted a denial of substantive due process. 961 F.2d at 1214. The Sixth Circuit held that, "the very existence of an allegedly unlawful zoning action, without more, makes a substantive due process claim ripe for federal adjudication." *Id.* at 1215. However, in *Insomnia* and *Grace Community Church*, the Sixth Circuit clearly indicated a shift in jurisprudence governing the review of state zoning actions, which requires landowners to obtain a final determination on a zoning issue before coming to federal court. Further, in the instant case, the township zoning board has not ruled on any zoning determination made by Ms. Frey.

Plaintiffs also argue that the ripeness requirement is relaxed for First Amendment claims. (Pls.' Resp. 16). Plaintiffs primarily rely on a recent Sixth Circuit opinion, *Warshak v. United States*, 532 F.3d 521, 533 (6th Cir. 2008), in support of their proposition.

In *Warshak*, the plaintiff was a suspect in a criminal investigation, during which the government obtained his emails without a warrant. *Id*. at 524. Warshak, after discovery the

government's actions, filed a declaratory judgment action alleging violations of the Fourth Amendment and the Stored Communications Act. *Id*. at 523.

The Sixth Circuit held that Warshak's constitutional claim was not ripe. *Id*. at 523. The Sixth Circuit explained that a controversy no longer existed because "we have no idea whether the government will conduct an *ex parte* search of Warshak's email in the further and plenty of reason to doubt that it will . . . ." *Id.* at 526. The Sixth Circuit further held that there was no meaningful risk of hardship to Warshak if the court did not consider his claim. *Id*. at 531. The Sixth Circuit explained that hardship occurs when a claimant faces a choice between immediately complying with a burdensome law or risking serious criminal and civil penalties. *Id*. at 531. The Court noted that in a First Amendment claim the ripeness requirements might be relaxed but Warshak had not alleged a First Amendment violation. *Id.* at 533.

In certain First Amendment cases, it may be appropriate to relax the ripeness requirement. This is not such a case. As discussed above, there is no meaningful risk of hardship to Plaintiffs if this Court does not consider their claims. Plaintiffs are not faced with a choice to immediately comply with a burdensome law, or risk serious criminal and civil penalties. Plaintiffs could have avoided the civil infraction ticket, and can still forestall the enforcement of the Defendants' initial determination of more intense use which requires an examination of the land use, by appealing to the Zoning Board of Appeals, which stays enforcement. Appealing the initial determination of the official will either resolve the case in favor of Plaintiffs or will further develop the factual record and refine Plaintiffs' constitutional claims. Either way, Plaintiffs must fully avail themselves of the zoning board of appeals process, or otherwise show that a final determination has been made, before pursuing their claims in federal court. Significantly, Plaintiffs are continuing to pursue their

14

religious activities at the residence.

Plaintiffs further contend that even a momentary loss of First Amendments rights constitutes irreparable harm. Plaintiffs cite to *Elrod v. Burns*, 427 U.S. 347, 373 (1976), and *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989), in support of their argument.

In *Elrod*, Cook County Sheriff's Office employees sued for violations of the First and Fourteenth Amendments after they were fired or threatened with dismissal for not being affiliated with the political party of the sheriff. 427 U.S. at 347. The Supreme Court held that firing or threatening dismissal for partisan purposes violates the First Amendment. *Id.* at 359-60. The Supreme Court also upheld an injunction entered by the lower court preventing further action by the sheriff's office because the plaintiffs' First Amendment rights were either threatened or in fact impaired when the injunction was sought. *Id.* at 373.

In *Newsom*, a group of inmate advisors filed to suit after a prison warden refused to reappoint the inmate advisors when their respective terms expired. 888 F.2d at 372. The inmate advisors alleged that the warden refused to reappoint in retaliation for complaint they had filed with the warden regarding the performance of the chairman of the disciplinary board. *Id.* at 373.

The Sixth Circuit affirmed the district court's decision that the inmate advisors suffered irreparable injury from the infringement of their First Amendments rights, and that injury continued even after termination. *Id.* at 378. To reach its conclusion, the Sixth Circuit relied on the Supreme Court's statement in *Elrod v. Burns*, 427 U.S. at 373, that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id.* at 378.

Unlike in *Elrod*, 427 U.S. at 373, and *Newsom*, 888 F.2d at 372, Plaintiffs' First Amendment rights have not been threatened or impaired by the township's actions. Plaintiffs, on their own

15

initiative, canceled one Bible Study group; they continue to hold multiple weekly Bible Study groups on the property, scheduled on their internet website. The township's decision to require a site plan is not an impairment of Plaintiffs' First Amendment rights. Plaintiffs' more intensive use of the residential property is what triggered the township's decision to require a site plan. In *Elrod* and *Newsom*, the plaintiffs all suffered First Amendment injuries when a government actors deprived them of employment due to their decision either to speak or not speak. Plaintiffs have not shown that a similar deprivation or injury has occurred at the hands of the township.

Although this Court's discussion largely centers on Plaintiffs' First Amendment claims, Plaintiffs' equal protection, due process and RLUIPA claims are also not ripe for adjudication, for the same reasons as discussed above. *See Insomnia*, 278 Fed. Appx. at 613-14 (noting that the Sixth Circuit has applied the finality requirement to equal protection, substantive and procedural due process and takings claims arising from land use disputes); *Grace Community*, 544 F.3d at 618 (affirming the district court's dismissal of the plaintiff's RLUIPA claim as unripe where the plaintiff had not obtained a final decision from the zoning board of appeals and the factual record was not sufficiently developed).

## III. CONCLUSION

This Court holds that Plaintiffs claims are not ripe.[1] Plaintiffs have not participated in the zoning appeals process and, therefore, have not received a final determination from the township. Moreover, Plaintiffs have not suffered an immediate injury attributable to Defendants' actions.

---

[1] This case is not factually comparable to *Brown v. City of Ecorse*, No. 08-1041, 2009 WL 1098715 (6th Cir., April 23, 2009), where the City refused to grant the Plaintiff permits to construct modular homes and the City's zoning ordinance gave its Building Department the discretion to reject his application for those permits. Under those facts, the Sixth Circuit found the case to be ripe for adjudication. *See id.* at 4 n. 6.

Thus, this Court grants the township's motion to dismiss Plaintiff's constitutional claims without prejudice.

SO ORDERED.

S/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  April 30, 2009

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on April 30, 2009.

S/Denise Goodine
Case Manager